EMHARDT *v.* PERRY STADIUM, INC., ET AL.

[No. 16,942. Filed February 20, 1943. Rehearing denied March 13, 1943. Transfer denied April 1, 1943.]

*Christian J. Emhardt* and *Claycombe & Stump*, all of Indianapolis, and *John A. Kendall*, of Danville, for appellant.

*Hume & Gaston*, of Danville, and *George C. Forrey III*, and *White, Wright & Boleman*, all of Indianapolis, for appellees.

FLANAGAN, P. J.—This was an action brought by the appellant to recover from the appellees damages because of personal injuries sustained while she was attending a baseball game, as a result of being hit on the head by a ball a spectator attempted to throw back into the playing field after it had been fouled into the grandstand. Appellees were owners of the stadium and baseball club respectively.

Appellees filed a motion to make the allegation of negligence in the complaint more specific, which was overruled. Thereupon appellees answered by general denial. The cause was tried to a jury which returned a verdict for appellees. The sole error assigned on appeal is the overruling of appellant's motion for a new trial which challenged the sufficiency of the evidence, and the action of the trial court in giving and refusing certain instructions.

The evidence is without dispute on material facts and discloses the following:

At the ball park in question appellees maintained a screened section of the grandstand, immediately behind the catcher, about 75 feet long, behind which were about 1350 seats where customers could sit without danger of being hit by a baseball. To the right and left of the screened section, along first and third base lines respectively, were unscreened sections of the grandstand. The screened section was never filled because most people preferred to sit in the unscreened section where their view was not obstructed by the wire netting. It was the custom, when a foul ball entered the grandstand, for an employee of appellees to proceed immediately to the person who received the ball and offer him a pass good for any game for its return. If such person did not care to accept the offer he retained the ball.

The accident here involved occurred on August 22, 1937. Appellant was a baseball fan and with her husband had attended games frequently for a period of four years prior to the accident. They nearly always occupied the same seats in a box in the unscreened section of the stadium. They liked those particular seats and had a kind of an understanding with the management that those seats would be saved for them. Appellant had seen foul balls knocked into the grandstand and thrown back into the playing field and was "always anxious about foul balls."

On the day in question a ball was fouled into the grandstand behind where appellant was sitting and a spectator recovered it. Appellant watched the course of the ball and the scramble until it was recovered and then turned her head toward the playing field where play was being resumed. The spectator who recovered the ball then threw it toward the playing field and it struck appellant in the back of the head causing her injury.

The only reasonable inference from the evidence is that appellees furnished a screened section sufficient for protection against batted or thrown balls for all those whose chose to sit in such protected section; that appellant had knowledge of the danger of those sitting in the unscreened section of being hit by a ball fouled in the ordinary course of the game or by such ball being thrown back to the playing field.

Appellant says that appellees owed her a duty to do something to prevent foul balls being thrown back into the playing field by spectators. She also says that play on the field should not have been resumed until the fouled ball was recovered, because that attracted her attention and prevented her from seeing the fouled ball being thrown back toward the playing field.

As to the latter proposition, the evidence is undisputed that appellees had no control over the resumption of play and the putting of the second ball into play, that being entirely under the jurisdiction of the umpire over whom appellees in turn had no control. But appellant says that even though appellees were not guilty of negligence in regard to the resumption of play on the field the fact that her attention was diverted to the playing field by the resumption of play should be considered in determining the question as to whether she "incurred the risk" or was guilty of contributory negligence under all the circumstances.

Appellees say that, (1) appellant, under the issues formed, was not entitled to claim advantage of any acts of negligence on the part of appellees not specifically alleged in the complaint and that the acts of negligence which she now seeks to assert were not specifically alleged in the complaint; and (2) appellant "incurred the risk" of the ordinary hazards of the game of which she had knowledge, by choosing to occupy seats in the

unscreened portion of the grandstand and that such risks included those from fouled balls and their return by spectators.

If appellees are correct in their second contention that appellant "incurred the risk" of the injury she received, appellant cannot recover and appellees' first contention need not require our consideration.

In those jurisdictions where similar situations have arisen the holding has been general that one who attends a baseball game where adequate screened protection has been provided, and chooses to occupy an unscreened portion with knowledge of the ordinary hazards of the game incident to such location, he "incurs" or "assumes" such ordinary known hazards. *Hudson* v. *Kansas City Baseball Club, Inc.* (1942), 349 Mo. 1215, 164 S. W. (2d) 318; *Williams* v. *Houston Baseball Ass'n.* (Texas 1941), 154 S. W. (2d) 874; *Keys* v. *Alamo City Baseball Co.* (Texas 1941), 150 S. W. (2d) 368; *Brummerhoff* v. *St. Louis Nat. Baseball Club* (Mo. 1941), 149 S. W. (2d) 382; *Cates* v. *Cincinnati Exhibition Co.* (1939), 215 N. C. 64, 1 S. E. (2d) 131; *Ivory* v. *Cincinnati Baseball Club Co.* (1939), 62 Oh. App. 514, 24 N. E. (2d) 837.

The general doctrine of "incurred risks" has been recognized in this State, *Indiana, etc., Oil Co.* v. *O'Brien* (1903), 160 Ind. 266, 65 N. E. 918, 66 N. E. 742; *Pittsburgh, etc., R. Co.* v. *Hoffman* (1914), 57 Ind. App. 431, 107 N. E. 315, although in some of the more recent cases it has been called part of the doctrine of contributory negligence. *Parry Mfg. Co.* v. *Crull* (1914), 56 Ind. App. 77, 101 N. E. 756; *Cleveland, etc., R. Co.* v. *Lynn* (1912), 177 Ind. 311, 95 N. E. 577, 98 N. E. 67.

Regardless of the term to be applied to it, we think the doctrine is applicable to the facts of this case.

Appellant chose to sit in an unscreened portion of the stadium although an adequate screened portion had been provided. She knew the danger from foul balls and the danger from such balls being thrown back by spectators. The fact that play was resumed seems immaterial. Appellant had equal knowledge with the management that a spectator might attempt to return the ball after resumption of play on the field. The spectator might have refused the offer of a pass and retained the ball, and later thrown it toward the playing field. The danger of a ball thrown by a spectator toward the playing field while play is in session seems to us to be an ordinary hazard of the game. Appellant knew of such hazard when she voluntarily chose the unprotected place to sit. Under such circumstances she is precluded from recovery. See also *Hedgecock* v. *Orlosky* (1942), 220 Ind. 390, 44 N. E. (2d) 93.

Appellees in due time moved for an instructed verdict. Their motion should have been sustained. In view of our conclusion that no other verdict except against appellant could have been returned under the evidence, the propriety of the giving or refusing of instructions is not material.

Judgment affirmed.

NOTE.—Reported in 46 N. E. (2d) 704.