Sherwood S. SPRUNGER, Dorothy E. Sprunger, Plaintiffs-Appellants,

v.

EAST NOBLE SCHOOL CORPORATION, Ed Keil, Defendants-Appellees.

No. 3–1285A361.

Court of Appeals of Indiana, Third District.

July 24, 1986.

Michael T. Yates, Latr1ealle Wheat, Torborg, Miller, Moss, Harris & Yates, Fort Wayne, for plaintiffs-appellants.

John F. Lyons, Gary J. Rickner, Barrett, Barrett & McNagny, Fort Wayne, for defendants-appellees.

GARRARD, Judge.

On June 9, 1984 Sherwood and Dorothy Sprunger attended a high school baseball game at Concordia Lutheran High School in Fort Wayne. The game in question was between East Noble and Warsaw. Ed Keil, a high school junior, was the starting third baseman for East Noble. He was assigned to bat fifth in the lineup.

Keil was two batters away from batting in the third inning when he left the dugout to commence warmup. He put on his batting glove and picked up the bat he practiced with. Already on the bat was a practice weight which looks like, and which the parties refer to as, a donut. Keil went to a point between the dugout and the on-deck circle and began taking warmup swings. During one swing the donut flew off the end of the bat and into the stands where it struck Mr. Sprunger.

Sprunger commenced this action for personal injury against East Noble School Corporation and Keil. Subsequently, the trial court granted summary judgment for Keil and this appeal followed. Sprungers contend there was a genuine issue of fact as to whether Keil was negligent in swinging the bat where and as he did at the time in question.

We do not reach that issue because under the circumstances Keil's only duty owed to the Sprungers was to avoid wilfully or wantonly injuring them.

Baseball games, and many other sports events, comprehend certain risks and elements of danger to spectators and voluntary spectators assume or incur the risk thereof.[1] *Emhardt v. Perry Stadium*

---

1. Considerable confusion has been generated in Indiana law concerning the appropriate meaning of these two terms. We need not re-enter the debate here since both were employed in *Emhardt.*

(1943), 113 Ind.App. 197, 46 N.E.2d 704; annot., 91 A.L.R.3d 24.

We emphasize that this was an organized game and that the Sprungers were voluntary spectators (as opposed for instance to the members of a gym class or children enrolled at a camp and required to attend a camp game). We do so not to intimate that the rule there might be different but simply to make clear that we are addressing the circumstances of the case before us.

Secondly, we assume for the purpose of discussion that there was some reasonable foreseeability that a batting weight might fly off the end of a bat. We do so because if it were not reasonably foreseeable, then Keil would not have been guilty of negligence in any event. *See, e.g., Hunsberger v. Wyman* (1966), 247 Ind. 369, 216 N.E.2d 345.

■ In considering the risks that spectators assume it is generally determined that the precise risk need not be foreseen. Thus the general rule followed in Indiana is that where there is a screened area for the protection of spectators and a fan elects to sit in an unscreened area, liability will be precluded even though injury arises, for example, from another fan's attempt to throw a fouled ball back onto the playing field.[2] *Emhardt, supra.* In other words, spectators attending baseball games are charged with knowledge that such things as bats and baseballs are occasionally hit or thrown into unscreened spectator areas. By electing to attend, they agree to accept the ordinary risks thereof.

With that in mind, we turn to a consideration of the duties owed by the players on the teams. They are there to participate in their sport and the regular activities attendant thereto, such as pregame batting practice, warmups, etc.

The teams, the coaches and the fans expect that the players' attention will be devoted to the game. For instance, as the court observed in *Benedetto v. Travelers*

*Ins. Co.* (La.App.1965), 172 So.2d 354, *application den.* 247 La. 872, 175 So.2d 108 (a thrown bat case: no liability) when a player hits what appears to be a safe hit his concern is to get rid of the bat and head for first base as fast as he can. It is not expected that his attention should be directed to the safety of spectators while he is engaged in the game.

■ Here the player was doing that which was ordinarily expected of a player: warming up prior to batting. He was where he was entitled to be, out of the field of play along the sidelines. He was using the regular practice bat and swing weight used by the team and authorized for use by teams generally. Regardless of whether other factors might impose liability on some other entity, the player's duty when so engaged was merely not to wilfully or wantonly injure any spectators or bystanders. This is so because vis-a-vis the players, the spectators have voluntarily incurred or assumed the risk of injury from balls, bats, catcher's masks, safety helmets, swing weights or other accouterments that may occasionally accidentally (including negligently) enter the spectator area during the course of the contest.

Thus, whether negligence was included in Keil's activity in swinging the bat and losing the donut is not material to the grant of summary judgment.

There was nothing in the record to establish Keil's actions as wilful or wanton. Indeed, they clearly were not. Accordingly, summary judgment in his favor was proper.

Sprungers also urge that it was error to grant the summary judgment while there remained pending their request for certain discovery concerning Keil's bat and the weights and a laboratory analysis. Since the requested discovery was immaterial to the basis for the summary judgment, it was not error to grant judgment before the discovery was completed.

2. The record in its present state does not disclose whether there was a screened area at the

Concordia field.

The summary judgment for Keil is affirmed.

STATON, P.J., and HOFFMAN, J., concur.